# Burk, Thomas & Co's. Appeal.

1. The owner of two judgments, one the first and the other the last lien, with writs and levy of personal property on both, the property remaining in possession of the defendant, may stay the first and release its levy, and secure the last, without postponement of so much of the first judgment as is realized upon the second to an intermediate lien-creditor.

2. A. & Co. were junior judgment-creditors of B.; C. held the first judgment lien on B.'s real estate. D. held the subsequent liens; C. issued a *fi. fa.* on his judgment and levied on B.'s personal property. A. & Co. issued a *fi. fa.* on their junior judgment and levied upon the same personal property. They then purchased and took an assignment of C.'s judgment, filed the assignment, and ordered the *fi. fa.* thereon returned with levy discharged, the property remaining in possession of the defendant. There was no collusion alleged and the defendant made no complaint. The court below held that this action of A. & Co. postponed the lien of C.'s judgment on the real estate of B., until the subsequent liens were discharged to the extent of the avails of the personal property levied upon for the debt of C. *Held*, that this was error, and that the full amount of said judgment should have been awarded to A. & Co.

March 12th 1879.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Court of Common Pleas of *Bradford county:* Of January Term 1879, No. 4.

Appeal of Burk, Thomas & Co. from a decree of the court confirming the report of the auditor, appointed to distribute the proceeds of the sheriff's sale of the real estate of J. W. Vandyke, in a judgment in favor of B. W. Lane. The facts are sufficiently stated in the opinion of this court.

*Williams & Angle*, for appellants.—A levy on personal property is not a satisfaction of the judgment *pro tanto :* Cummins's Appeal,

[Burk, Thomas & Co.'s Appeal.]

9 W. & S. 73; Morrison v. Hoffman, 1 Barr 13; Taylor's Appeal, Id. 390; Cathcart's Appeal, 1 Harris 416; Campbell's Appeal, 8 Casey 88; McLaughlin v. McLaughlin, 4 Norris 317.

After a levy on personal property, the execution-creditor, who has caused the levy, may withdraw the execution and discharge the levy without discharging the lien of his judgment on the land: Cathcart's Appeal, supra; McLaughlin v. McLaughlin, supra.

Applying these principles to the case, and James Vandyke could have withdrawn his execution and discharged the levy, without postponing his lien upon the debtor's real estate. Burk, Thomas & Co. can do all that Vandyke could have done.

J. McPherson, for appellee.—If appellants had sold the personal property on both their writs of fi. fa., it cannot be pretended that even with the consent of J. W. Vandyke, the defendant, that they could have applied the proceeds on the writ issued on their posterior judgment, after the writ had issued on their prior judgment, so as to continue the latter judgment in full a lien on land, to the prejudice of intervening liens: Davison's Assignees v. Patton, 13 S. & R. 345.

If they had not sold the property on either writ at sheriff's sale, but released it from both levies, and bought it at private sale in satisfaction of their posterior judgment, to the prejudice of intervening liens, this would operate as postponement to such liens pro tanto: Hunt v. Breading, 12 S. & R. 37; Wood v. Vanarsdale, 3 Rawle 406.

If the appellants could not, by either of the above methods, obtain satisfaction of their posterior judgment, and an advantage over the intermediate lien-creditors, can they without the consent of the defendant, by shifting the levy from one execution to another? The rule stated by Justice Bell in Cathcart's Appeal, 1 Harris 422, furnishes the answer: "It is also true that one who has levied on the chattels of his debtor, will not afterwards be suffered to divert the levy to the payment of a posterior judgment, in detriment of an intermediate lien." The same rule is found in Campbell's Appeal, 8 Casey 92; and is illustrated by the reasoning to be found in Hunt v. Breading, Dean v. Patton, and Wood v. Vanarsdale, supra.

Mr. Justice TRUNKEY delivered the opinion of the court, March 24th 1879.

James Van Dyke and B. W. Lane held judgments against J. W. Van Dyke, Lane's being the posterior liens. On the 16th August 1877, James Van Dyke issued execution, by virtue of which the sheriff levied on the defendant's personal property and advertised it to be sold on the 29th of same month. Burk, Thomas & Co., on the 24th August, obtained judgment against J. W. Van Dyke,

for $220.21, and issued execution, upon which the defendant's goods were sold, on the 14th of the following month, for $268.80. The sheriff applied $238.28 in satisfaction of their writ and paid the balance to Lane, on an execution he had issued the 25th of August. The day after Burk, Thomas & Co. had obtained judgment and issued execution, they purchased James Van Dyke's judgment and ordered the writ returned and levy discharged, for the purpose of securing their junior lien. Upon these facts, in distribution of proceeds of sale of J. W. Van Dyke's real estate, the sum of $220.21 of the James Van Dyke judgment was postponed for the benefit of Lane: and this act is assigned for error.

The question is, whether the owner of two judgments, one the first and the other the last lien, with writs and levy of personal property on both, the property remaining in possession of the defendant, may stay the first and release its levy, and secure the last, without postponement of so much of the first judgment as is realized upon the second to an intermediate lien-creditor. It is said that Hunt *v.* Breading, 12 S. & R. 37, and Dean *v.* Patton, 13 Id. 341, rule in favor of postponement. The key-note of the opinions in those cases is, that a levy of goods is a satisfaction of the debt to the extent of their value. In the former, after stating the facts, GIBSON, J. says, "It is unnecessary to consider the effect of the rule in equity which compels a creditor who has a security on two funds, to take his satisfaction out of a particular one of them, in favor of a creditor who has a security exclusively on the other, as I am satisfied, on principles of law, that a judgment-creditor who has seized the goods of his debtor in execution, cannot discharge them, and leave his judgment in force as to the land." He next considers the "particular circumstances in the case stated which render it a peculiar one," and adds, "that such an arrangement would be fraudulent in contemplation of law, I am very much inclined to believe. But the cause is clearly with the defendant on another ground. Seizing goods in execution to the value of the debt, is a discharge of all responsibility on the part of the debtor, and consequently, a discharge of the judgment, whether the goods be sold or not." And concludes thus: "Here the sheriff returned, that he had levied and left the goods in the possession of the debtor, and the judgment must therefore be treated, as having been at one time actually satisfied; * * * consequently, its lien on the land is gone." He does not pronounce the arrangement fraudulent, though inclined to think it was, nor base his conclusion on any rule in equity in reference to postponement, or election of a fund, but puts the decision on satisfaction of the debt by reason of the levy of goods, and upon nothing else. In Dean *v.* Patton, DUNCAN, J., with like directness, points to the foundation of the judgment, namely, that Canan, having two judgments against Clarke, on which writs of fieri facias had been issued and returned with levy of goods, and

*venditioni exponas* issued on both, and sale of the goods on both, could not, with Clarke's consent, authorize the sheriff to apply the proceeds on the second so as to preserve the lien of the first against an intermediate mortgage.    It was argued for Canan that the goods sold were not the goods levied on. by the first execution ; and to that it was answered it was not proved, and if it were, it would be equally fatal to his claim for the reason that "by seizure of the goods the debt was discharged, as far as the value." The base of that decision was, satisfaction by actual levy and sale of goods on the first judgment, and the dictum, that a debt at law is satisfied by the levy.

It would be interesting to trace the transition from the rule, recognised in Hunt *v.* Breading, to the one now settled in this state, to wit: If an older judgment-creditor sues out a fi. fa. and levies it upon personal property, these acts alone neither pay his debt, nor postpone his lien upon the debtor's land to that of a junior judgment.    He may leave the goods levied upon in the debtor's hands ; he may release his levy and abandon his fi. fa. without affecting his right as an older lien-creditor, to claim the proceeds of sale of the debtor's land : Campbell, Bredin & Co.'s Appeal, 8 Casey 88, and cases there cited.    The dicta found in a number of cases resting on Hunt *v.* Breading, would not stand on the present rule.    Yet it is as true now as then that, as between distributees, what does not amount to a satisfaction of the debt, as between debtor and creditor, may postpone a prior lien-creditor to a junior one.    But postponement must be on other grounds than satisfaction of the debt by a mere levy of goods.    Where the goods have been left in the continued possession of the debtor and he has been permitted to use them as his own, and he has lost nothing by the seizure, the levy is no satisfaction of the judgment.

The goods were not taken from the defendant on the James Van Dyke execution.    He lost nothing by the levy on that writ, and the plaintiff realized nothing.    James Van Dyke, had he not sold his judgment, could have stayed his writ and discharged the levy without danger of postponement of lien on real estate.    He lawfully assigned the judgment to Burk, Thomas & Co., junior creditors, and they had a right to do with it what he could have rightfully done. Burk, Thomas & Co. violated no rule of ethics in the fair and vigilant use of means for collection of their debt ; and the obtaining judgment and immediate issue of a fieri facias present no appearance of wrong.    Lane could have issued his execution as well before as after ;  and his delay is no especial merit requiring compensation for what he lost by it.    There is neither proof nor cause for pretence that he was circumvented.    No artifice delayed him in issuing his writ.    The auditor does not find that Burk, Thomas & Co. practised deceit or collusion, and he returns no evidence that they did.    Must they forbear the use of legal process in tenderness

8 Norris—26

[Burk, Thomas & Co.'s Appeal.]

to an intermediate sleeping lien-creditor ?    The law does not forbid her remedies to one seeking to collect his due, but rather sanctions their use by aiding the wakeful creditor who commits no fraud.

So much of the decree as postpones the sum of $220.21, and interest thereon from September 14th 1877, of judgment No. 270, September Term 1873, now for use of Burk, Thomas & Co., is reversed ; and it is now considered and adjudged that the full amount of said judgment and its interest be allowed, and distribution be corrected accordingly.    Costs to be paid by appellees.