# J. R. Clausen & Son v. The Bellevue Building & Loan Association, Appellant.

*Execution—Equity—Election of funds.*

A creditor who has security on two funds is compelled to take his satisfaction out of a particular one of them in favor of a creditor who has security exclusively on the other.

*Execution—Liens—Equity of junior incumbrances.*

A judgment creditor who has seized the goods of his debtor in execution cannot, after sale on fi. fa., discharge the proceeds and leave his judgment in force as to the land, to the prejudice of judgment creditors who otherwise would be paid out of the land.

*Liens—Equity of junior incumbrances.*

A creditor may not, with a fund awaiting him in part payment of a first lien, deliberately resign it to a later lien, and thereby deprive an intermediate lien of the benefit of a pro tanto release of land, against

which he has also a prior lien; such action violates the equity of junior incumbrances.

Argued Oct. 12, 1897. Appeal, No. 85, Oct. T., 1897, by defendant, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1896, No. 356, in favor of plaintiff on case stated. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Case stated. Before WILTBANK, J.
The facts sufficiently appear in the opinion of the court.
The court below entered judgment for the plaintiff on the case stated, in an opinion by WILTBANK, J., reported in 6 Dist. Rep. 234, for $139.60. Defendant appealed.

*Error assigned* was entry of judgment on case stated in favor of plaintiff.

*Alfred H. Faber*, for appellant.—Appellant had the right to pass either fund and take payment from the other: B. & L. Assn.'s Appeal, 92 Pa. 200; McDevitt & Hay's Appeal, 70 Pa. 373.

If appellee had any rights to preserve he should have given notice to the appellant. No notice was given or protest made: Horning's Appeal, 90 Pa. 388.

The decision of the court below was based upon the dicta found in Campbell, Bredin & Co.'s Appeal, 32 Pa. 88.

As was said in Burk, Thomas & Co.'s Appeal, 89 Pa. 398, the appellant violated no rule of ethics in staying its writ, the only difference in the facts of the two cases being that the stay in the former was immediately before the sale, and in this case immediately after.

*Rudolph M. Schick*, for appellee.—The rule of law governing this case is stated in Campbell, Bredin & Co.'s Appeal, 32 Pa. 88, and this statement of the rule is the result of a long line of decisions.

OPINION BY ORLADY, J., April 18, 1898:
In the distribution of the proceeds realized from the sales of personal property and real estate of John F. Pugh, the facts were

submitted in a case stated in which J. R. Clausen & Son are plaintiffs and The Bellevue Building and Loan Association is defendant, showing the following liens in their order: 1. February 27, 1894, a mortgage owned by the Bellevue Building & Loan Association for $1,000.  2. February 27, 1894, a mortgage owned by the same creditor for $1,000.  3. December 18, 1894, a judgment owned by James E. Dingee for $768.86.  4. April 3, 1895, a mortgage owned by J. R. Clausen & Son for $4,000.  5. A judgment in favor of J. R. Clausen & Son for $1,885.85.  6. August 5, 1896, a judgment in favor of the building association for $326.55.

On July 9, 1896, the building association obtained judgments on its two mortgages (1st and 2d), issued writs of levari facias, and in pursuance thereof the sheriff sold the real estate on August 3, 1896, to Clausen & Son for $4,100, and on November 7, 1896, he had the deed therefor acknowledged and delivered to the purchaser.  On July 13, 1896, a writ of fieri facias was issued on the Dingee judgment (3d, $768.86) and on the same day the personal property of the defendant was levied upon. On August 5, 1896, a writ of fieri facias was issued on the Building & Loan Association judgment (6th, $326.55) under which the sheriff levied upon the same personal property, "subject to said prior levy."  On August 14, 1896, the personal property was sold by the sheriff under both writs of fieri facias for a sum, after payment of costs, amounting to $139.60.  A rule was then taken by the Building & Loan Association on the sheriff to show cause why the money should not be paid into court for distribution.  On August 21, 1896, the Building and Loan Association purchased the Dingee judgment (3d, $768.86), and, by leave of court, withdrew the rule taken at its suggestion and directed the sheriff to return the writ of fieri facias issued on the Dingee judgment as "stayed by order of plaintiff," which was accordingly done.  The Building & Loan Association urged that the $139.60 should be applied to the judgment secured by it on August 5, 1896 (6th, $326.55), and that the whole of the Dingee judgment (3d, $768.86) should be paid out of the proceeds of the sale of the real estate.  Clausen & Son contended that the $139.60 should be applied to the Dingee judgment and that the balance of that judgment should be paid out of the real estate fund.  On the case stated a judgment was entered

in favor of the plaintiff, and the record is brought into court for review.

Under the facts, the debtor had his personal property taken from him on August 14, 1896, his real estate on November 7, 1896, while the proceeds of both sales did not amount to a sufficient sum to pay in full the executions and liens of record. The title to the real estate did not pass to the purchaser until the acknowledgment of the deed, Collins v. Assurance Corp., 165 Pa. 298, though the interest on the liens of record stopped on the day of sale: Lukens's Appeal, 151 Pa. 216.

The personal property fund did not amount to sufficient to pay the first fieri facias, and while it was a discharge of the debtor's estate to the extent of the amount realized,—the creditor's debt which it will extinguish is a question to be settled only by the final distribution and appropriation. The sale, and the receipt of the money by the sheriff are not per se a satisfaction of any particular incumbrance, though the lien of it may be extinguished. Hence it has been held over and over again that a creditor having two funds subject to his incumbrance may pass the first by and come in upon the second for payment; a thing he could not do if the fund first brought into distribution were a satisfaction of his debt. Whether he will be permitted to do this, or, having done it, whether a junior incumbrance will be permitted to stand in his place by subrogation, will depend upon the equities among the lien creditors which ought to prevail: McDevitt & Hay's Appeal, 70 Pa. 373.

The case stated does not show that the Clausen & Son's mortgage had ripened into a judgment, nor that they had secured their judgment for $1,885.85 (5th), prior to July 13, 1896, the day on which the Dingee execution was issued, which would have enabled them to pursue the personal property. Prior to the time of purchase of the Dingee judgment the B. & L. Association was a stranger to it, and by its purchase sought to advance their last judgment $326.55 (6th), into a more favorable position. The assignment was secured to frustrate equity and not to advance it. By asserting the last judgment $326.55 (6th) so as to appropriate the whole of the $139.60 personal property fund, that amount was diverted from the Dingee for use judgment $768.86 (3d) and passed over the $4,000 (4th), and $1,885.85 (5th), and applied to the $326.55 (6th), lien against the real estate. If an

older judgment creditor sues out a fi. fa. and levies it upon personal property, these acts alone neither pay his debt nor postpone his lien upon the debtor's land to that of a junior judgment. He may leave the goods levied upon in the debtor's hands; he may release his levy and abandon his fi. fa. without affecting his right as an older lien creditor to claim the proceeds of sale of the debtor's land, but only when the goods by the seizure have been lost to the debtor, is the judgment satisfied: Campbell, Bredin & Co.'s Appeal, 32 Pa. 88; Stephens v. Bank, 88 Pa. 157.

In this case the creditor went much farther; Dingee pressed his execution so as to deprive the debtor of his property and produced a fund in the sheriff's hands which specially awaited his particular writ at a time when distribution had not been made of the real estate fund. He pursued this fund by ruling it to be paid into court so that he might have the fruit of his execution, and while in this favorable position the B. & L. Association purchased his rights as plaintiff, by which the Dingee judgment was substituted to his equities and bound by his responsibilities.

The association then surrendered the fund awaiting it, in order to transfer the proceeds of said prior levy to one made secondary to it, so that the mortgage of Clausen & Son might be deprived of its lien against the land to the extent of its attempted transfer. This mortgage was recorded April 3, 1895, more than a year before the executions were issued against the personal property, and the record plainly showed the effect of staying the Dingee, for use, writ. The B. & L. Association had record notice of this fact and did not require further notice. The association was not required to search for subsequent incumbrances but was bound to take notice of liens preceding their judgment: Coyle's Appeal, 163 Pa. 222.

It is said in Burk Thomas & Co.'s Appeal, 89 Pa. 398, " The dicta found in a number of cases resting on Hunt v. Breading, 12 S. & R. 37, would not stand on the present rule. Yet it is as true now as then that, as between distributees, what does not amount to a satisfaction of the debt, as between debtor and creditor, may postpone a prior lien creditor to a junior one."

The object of the execution is payment of money. The levy does not divest the defendant of the property and transfer the

title to the plaintiff or to the sheriff as that officer is a mere bailee to enable him to keep the property safely and defend it against wrongdoers while it is in the custody of the law under a mere naked power to sell so as to pass the title to the purchaser, but if the property is lost to the defendant by the misconduct or neglect of the sheriff, the execution is satisfied to the extent of the value of the property and the plaintiff can only look to the sheriff for indemnity: Walker v. Commonwealth, 18 Gratt. 13; s. c., 98 Am. Dec. 631; Ladd v. Blunt, 4 Mass. 402. A sale of sufficient property satisfies the execution even though the money obtained be misappropriated by the sheriff: Reynolds v. Ingersoll, 11 Smed. & M. 249; s. c., 49 Am. Dec. 57; or even if the goods sold do not belong to the debtor: Jones v. Burr, 5 Strobhart's Law, 147; s. c., 53 Am. Dec. 699. When the debtor has been deprived of his property by the sale, the proceeds of that sale are a satisfaction pro tanto of the execution producing the fund: Peck v. Tiffany, 2 N. Y. 451. Until the sale of the property is consummated, the plaintiff may control the execution but after the sale, when the defendant has been deprived of his property there is no way of placing him in the position he held before the sale. Even giving to him the proceeds would in many instances be a poor equivalent for the property which rarely brings its full value at a sheriff's sale.

In the sale of his judgment, Dingee and the purchaser should have determined its value by crediting it with the proceeds of the personal property sale. This would be equitable as between the creditors of Pugh, and any other manner of placing the amount of that sale is bound to be inequitable. Dingee had the means within his grasp of a partial satisfaction of his judgment, and its subsequent treatment was more than an election to pass the fund. In order to prejudice the right of a third person he surrendered a certainty which was produced by his judgment and which was at the time of the assignment, applicable only to it.

The assignments of error are overruled and the judgment is affirmed.