Levi L. Fritch and Sarah S. Fritch, Appellants, *v.* The Citizens' Bank of Reading and The Allentown National Bank of Allentown.

*Principal and surety—Equity—Liens.*

A surety's property cannot be taken to pay the debt of his principal where there is enough property of the latter available for that purpose; and this right accrues to the surety the moment his position as surety is established. He is not bound to wait until he has actually paid the principal's debt.

*Execution—Distribution amongst execution and lien creditors—Equal equities—Priority among liens.*

Where equities of execution and lien creditors are equal, the distribution must be made according to the legal rights of priority among the liens.

A fund for distribution arose from a sheriff's sale of real estate held in four different ways: First, as the individual property of T.; second, as the individual property of M.; third, as the joint property of T. and M.; fourth, as the joint property of T., M. and L. The liens were (1) judgment against all three of the debtors jointly and severally; (2, 3, 4) judgments all entered on the same day against T. and M.; (5) judgment against T. and M., and (6) judgment of S. against L. It appeared that L. was only a surety in lien No. 1. The holders of the second, third and fourth liens purchased lien No. 1. *Held,* (1) that as S. had an equity to have lien No. 1 paid out of the estates of T. and M., and as the holders of liens Nos. 2, 3 and 4 had an

equity to have lien No. 1 paid out of L.'s portion, it was equity against equal equity, and the fund should be distributed according to the strict rule of legal priority; (2) that the purchase of lien No. 1 by the holders of liens Nos. 2, 3 and 4, and the pooling of their claims, gave them no additional rights.

Argued Feb. 27, 1899. Appeal, No. 87, Jan. T., 1898, by Levi L. Fritch, from order of C. P. Berks Co., dismissing exceptions to auditor's report. Before Sterrett, C. J., McCollum, Mitchell, Dean and Fell, JJ. Reversed.

Exceptions to report of auditor, Horace Rowland, Esq.

From the auditor's report, it appears that on April 19, 1894, Tilghman L. Fritch, Manoah L. Fritch and Levi L. Fritch, brothers, made an assignment of all their partnership property, real and personal, to M. S. Long, in trust for their creditors. Tilghman L. Fritch, Manoah L. Fritch and Levi L. Fritch owned real estate in common; Tilghman L. Fritch and Manoah L. Fritch owned real estate in common; and each of the three brothers owned real estate individually and in severalty. The assignee sold the property held in common by the three brothers, the property held in common by Tilghman L. Fritch and Manoah L. Fritch, and the individual property of Tilghman L. Fritch and Manoah L. Fritch. The real estate held by Levi L. Fritch in severalty remains unsold.

Before the auditor, appointed to make distribution of the funds raised by the said sales, Levi L. Fritch and Sarah S. Fritch insisted that the proceeds of the real estate of Tilghman L. Fritch and Manoah L. Fritch should be appropriated to the payment of the first judgment of $10,000 whereon Levi L. Fritch was but a surety, in relief of the surety, and in order that Sarah L. Fritch's judgment against Levi L. Fritch individually might be advanced to a first place with respect to the real estate of Levi L. Fritch, upon which it was a lien. The auditor refused so to appropriate the said fund, and, at the request of the Citizens' Bank and the Allentown National Bank, who had become the purchasers of the first judgment of $10,000, omitted the said judgment from the distributions as to the property of Tilghman L. Fritch and Manoah L. Fritch, who were the principal debtors upon said judgment, but appropriated the proceeds of Levi L. Fritch's individual interest in the property held by the three

brothers in common towards the payment of said judgment, though he was but a surety.

The facts appear by the opinion of the Supreme Court.

ERMENTROUT, P. J., dismissed the exceptions to the auditor's report.

*Errors assigned* were in dismissing the exceptions.

*Cyrus G. Derr,* with him *D. Nicholas Schaeffer,* for appellants. —Where there is a judgment against a principal debtor and a surety, which is a lien upon the real estate of both principal and surety, and the property of the principal debtor is converted into money by a judicial sale, to be distributed, the surety has a standing and a right to demand that the judgment be paid out of the fund produced by the sale of the property of the principal debtor, so that the surety's property may be divested of the lien of the judgment, and be personally relieved from liability: Irick v. Black, 17 N. J. Eq. 195; Philadelphia & Reading R. R. Co. v. Little, 41 N. J. Eq. 529; Moore v. Topliff, 107 Ill. 249; Wright v. Simpson, 6 Vesey, Jr. 734; Commercial Nat. Bank v. Henninger, 105 Pa. 501.

Where there is a judgment against a principal and a surety, and a subsequent judgment against the surety alone, and the real estate of the principal debtor has been converted into money by a judicial sale, and is before the court or the court's auditor for distribution, the creditor whose judgment is against the surety alone has a standing and a right to insist that the holder of the judgment against the principal and surety shall take the proceeds of the sale of the property of the principal debtor, leaving the property of the surety to be made available for the payment of his own proper judgment: Brandt on Suretyship, sec. 286; MacVeagh v. Darlington, 1 Chester Co. 150; Greenwood v. Rambo, 1 Chester Co. 275.

*R. E. Wright,* with him *Stevens & Stevens,* for appellees.— The creditor has the right to pursue his remedies and apply his securities in such a way as will most effectually secure his debt: Bispham on Equity, sec. 338; Burk, Thomas & Co.'s App., 89 Pa. 398.

Considering their judgments as separate claims, the appellee had the right to insist that the judgments against Monoah and

Tilghman which were liens on the real estate of but two of the assignors, should be paid out of the real estate of the two (Manoah and Tilghman) in preference to the judgment against Tilghman, Manoah and Levi which was a lien on the real estate of the three assignors (and the holder of the judgment against the three assenting to this application), unless this equitable right is interfered with by the existence of some higher equity: Robeson's App., 117 Pa. 628; Lloyd v. Galbraith, 32 Pa. 103; Bruner's App., 7 W. & S. 269.

As to the equity of Sarah A. Fritch, we submit that, being subsequent in her judgment as to date, she has no equities apart from those of the defendant, Levi L. Fritch, and which can only be worked out through him: Lloyd v. Galbraith, 32 Pa. 103; Knouf's App., 91 Pa. 78.

As to the equity of Levi L. Fritch, one of the appellants, on the ground that he is but a surety on the judgment of the Second National Bank, we submit that the claim of a surety to control the process and securities of the creditor, by subrogation is based entirely on considerations of benevolence and equity, can never be applied to the injury of the creditor, and the right to subrogation can only arise after the creditor has been fully satisfied and paid: Bispham on Equity, sec. 338; Hoover v. Epler, 52 Pa. 522; Ins. Co. of North America v. Fidelity, etc., Co., 123 Pa. 523; Kyner v. Kyner, 6 Watts, 221; Bank of Penna. v. Potius, 10 Watts, 148; Musgrave v. Dickson, 172 Pa. 629; Allegheny National Bank's App., 19 W. N. C. 78.

Assuming that Levi was but a surety on the Second National Bank judgment, the authorities cited demonstrate that he cannot avail himself of the right of subrogation until he has paid the debt or the creditor has been satisfied. If by payment Levi had qualified himself to demand subrogation, and had then demanded subrogation and had presented against the estate of Manoah and Tilghman the judgment he had paid, the importance and the equity of the rule would have appeared at once: Neff v. Miller, 8 Pa. 347; Sterling v. Brightbill, 5 Watts, 229; Singizer's App., 28 Pa. 524; Fessler v. Hickernell & Bomberger, 82 Pa. 150; Knouf's App., 91 Pa. 78.

OPINION BY MR. JUSTICE MITCHELL, May 8, 1899:

To avoid confusion from the somewhat complicated facts

presented by this appeal, it is well to look first at the strict legal rights of the parties, and then to any special equities that may affect the enforcement of such rights.

The fund for distribution arose from the sale of real estate held in four different ways : first, as the individual property of T. L. Fritch; second, as the individual property of M. L. Fritch; third, as the joint property of T. L. and M. L. Fritch, and fourth, as the joint property of T. L., M. L. and L. L. Fritch. It is not clear whether some part of the fund was not also derived from the sale of personal property of T. L. and M. L. Fritch. If so, it should be set apart and distributed according to its own rules. As to this however the facts are not sufficiently presented to call for any further remark.

Outside of some small claims for dower, etc., not in contest, the liens on this fund in the order of their priority were, first, judgment of the Second National Bank for $1,000 against all three of the debtors, jointly and severally; second, third and fourth, judgments of the Citizens' Bank for $30,000, the Allentown Bank for $10,000, and the Allentown Bank for $950, all entered on the same day against T. L. and M. L. Fritch; fifth, judgment of the Allentown Bank against T. L. and M. L. Fritch for $5,000; and sixth, judgment of Sarah L. Fritch against L. L. Fritch for $4,950.

On this schedule the legal distribution would have been first, to lien No. 1, the judgment of the Second National Bank, in full, which would have exhausted all of the fund arising from L. L. Fritch's land held in common, and secondly, to liens Nos. 2, 3 and 4 pro rata, which would have exhausted the balance of the fund. The first equity presented was by L. L. and Sarah L. Fritch, claiming that as L. L. Fritch was only a surety in lien No. 1, the judgment of the Second National Bank, and as there was enough money from the estates of the principal debtors to pay this lien in full, therefore, so much of the fund as represented L. L. Fritch's individual estate should be reserved for his individual lien creditor. The auditor found the fact to be that L. L. Fritch was a surety only, but refused to reserve that part of the fund, for reasons which will be noticed later on. The holder of liens Nos. 2, 3 and 4, having purchased lien No. 1, requested the auditor to confine his distribution to it to that part of the fund which was derived from the share of L. L. Fritch in the undi-

vided lanu held by the three brothers, and to leave the rest of the judgment as a continuing lien against his individual estate. This the auditor did.

This course was a clear and substantial error, to the injury of L. L. Fritch, as surety, and S. L. Fritch, as his lien creditor, by taking the surety's property to pay the debt of his principal while there was property enough of the latter available for that purpose.

The equity of the surety to have the principal debtor's property first exhausted is indisputable, but the auditor was of opinion that neither he nor his creditor was yet injured or in such peril as to be entitled to relief, and further that " the party whose rights are claimed to be used must be fully satisfied before an equity will arise to the party claiming to use them." This is quite true, but it does not reach the present case. There is money enough to pay lien No. 1 in full out of the funds of the principal debtors to it, and were the Second National Bank and this appellant the only parties concerned, there could be no possible question of the right of the appellant to the relief asked. And this right accrued to him the moment his position as surety was established. He was not bound to wait until he had actually paid the principal's debt. On the other hand, liens Nos. 2, 3 and 4, being restricted to the fund from T. L. and M. L. Fritch's estate, have an equity to compel lien No. 1 to take satisfaction out of L. L. Fritch's portion, and if these were the only parties concerned this equity would be indisputable. But with all the parties being claimants, it is equity against equal equity, and neither can prevail. To put it in compendious form, the Second National Bank has a lien on the joint fund and on the individual fund of L. L. Fritch; the Citizens' Bank has a lien on the joint fund only; Sarah L. Fritch has a lien on the individual fund only; as against the Second National Bank each of the others has an equity to compel it to seek satisfaction out of the fund which the intervener cannot reach. It is clear that neither can have an advantage as against the equal equity of the other. And so, in general, wherever the application of this equity in the ordering of execution or distribution to liens is met by a countervailing equity of equal force in favor of another lien, the strict rule of legal priority must be followed.

The purchase of the first lien by the holders of the second,

third, and fourth, and the pooling of their claims, gave them no additional rights. The equity of Sarah L. Fritch against the Second National Bank could not be taken away by the sale of the latter's claim to the intervening lien holders. They must stand on their own rights. As between themselves they may pool their claims and modify their rights at will, but as against others their rights remain unchanged. No principle analogous to tacking has ever been recognized in this state. Burk, Thomas & Co.'s Appeal, 89 Pa. 398, does not sustain this contention. What that case decided was that a creditor may release or withdraw his levy on fi. fa. against personal property without affecting the lien of his judgment on the land, even though the purpose of withdrawing the levy was to let in another fi. fa. on another judgment held also by him. But this is very different from destroying the legal or equitable rights of lien holders.

An additional reason assigned by the auditor for refusing the equity of L. L. Fritch as surety was that, as to the judgments of the Citizens' and Allentown Banks, his brothers were sureties for him, thus creating " between the three an interchangeable and rebounding liability and suretyship for each other's debts." But this appears to be an inference from the fact that the judgments were founded on notes, on some of which L. L. Fritch's name appears as maker or indorser, and that some of these notes were for liabilities growing out of a paint business in which he was a partner. But this inference is not justified by anything that appears. The circumstances under which the notes were made were not shown, and the giving of the judgment by T. L. and M. L. Fritch alone would lead to the presumption that they alone were primarily liable. The strongest conclusion that could fairly be drawn from the facts would be that he was a joint debtor with his brothers on the notes. There was no evidence that he was the principal debtor and his brothers only sureties.

On the whole case we are of opinion that the equities being equal the distribution must be made according to the legal rights of priority among the liens.

Decree reversed, and distribution directed to be made in accordance with this opinion. Costs to be paid by the appellees.