9 21
32 SC ² 20

---

·TALMAGE èt al. *v.* BURLINGAME AND IRONS.

Where A. becomes surety for B., without his knowledge or request, B. is not liable over to A. for the costs of an action by the creditor against A., and B. is therefore a competent witness for A., in an action by the creditor on the contract.

But if one becomes surety for another with the assent or knowledge of the creditor, the creditor is bound by all the rules respecting sureties, though the principal is not so bound for want of privity of contract, unless it be through the medium of a subrogation to the security of the creditor.

Where judgment is recovered against two jointly, and it is opened as to one who is let into a defence, the other is a competent witness for him, for though a party to the record, his liability is determined, and the proceeding is, in effect, a feigned collateral issue to test the liability of the other party.

IN error from the Common Pleas of McKean.

*July* 12. Burlingame and Irons executed a note in favour of plaintiffs, in the following form:—"I promise to pay, &c.," with

warrant of attorney, under which judgment was entered against them jointly. This judgment was revived by *scire facias*, when Irons filed an affidavit, on which the court opened the judgment against him, and let him into a defence.

On the trial of this cause, the defendant proved that the attorney of the plaintiffs held a claim against one Freeman, who offered to liquidate it, by giving a note signed by Burlingame, whom Freeman represented to be his debtor. The attorney refused to accept this without additional security, but he agreed to accept the joint note of Burlingame and Irons. The attorney communicated the arrangement to his principals, without stating the particulars, and they approved of it, and discharged Freeman.

The defendant then proved by Burlingame, under exception as to competency, that he was a debtor of Freeman, and had refused to give any security. That when he signed the note, Irons' name was not on it, nor did he know of this signature for some time afterwards; that he never procured the name, nor saw the note with the name on it.

He then proved by the same witness, that a levy had been made by plaintiffs on Burlingame's personal property, sufficient to satisfy the debt; and that the property was released, and six months' time given by the attorney to Burlingame, on receiving his judgment-note which was entered up, but had never been paid.

McCalmont, P. J., instructed the jury, that if Irons was but a surety of Burlingame, and the attorney knew it, and released the goods of Burlingame from the execution, Irons' liability would be discharged to the extent of the value of the goods. And that if a stay of execution for a definite time was given, on receiving the note of Burlingame, the surety was discharged.

The admission of the witness, and the charge, were the errors relied on.

*White*, for plaintiff in error.—If Irons was a surety, then Burlingame was liable over to him not only for the amount of the judgment but for the costs, and hence his interest preponderated, and he was incompetent: 9 S. & R. 236; 10 Johns. 70; 3 W. & S. 557; 9 W. 144; 1 Binn. 444; 3 Barr, 154. He was moreover a party to the record, and hence was incompetent, though not interested: Wolf *v.* Fink, 1 Barr, 440; 3 Barr, 360. But he was not a surety, but a principal debtor, and hence the release of the execution, &c., did not discharge Irons: 2 Barr, 416.

*Johnson*, contrâ.—If Burlingame was primarily liable to the

payment of the debt, Irons was his surety, and entitled to the benefit of the doctrine : Theo., Prin. and Su. 123, 129, 130. Nor is it material that a judgment has been entered against him : 7 W. & S. 335.

BELL, J.—It is a trite rule in equity that if a creditor has in his hands or power the means of payment, and voluntarily relinquishes it, or if he agree, for consideration, to give to the principal debtor further credit for a definite time, without the assent of the surety, the latter is discharged, though judgments may have been recovered against both. Of relief given upon the first of these grounds, The Commonwealth *v.* Miller, 8 S. & R. 452, is an example and illustration, and The Manufacturers' and Mechanics' Bank *v.* The Bank of Pennsylvania, 7 W. & S. 335, furnishes an instance of the second. They are alluded to not because the proposition at this time of day requires the aid of citations to compel assent to it, but for the reason that both these cases are, in feature, much like the present. On the trial, the defendant furnished evidence that both these contingencies had occurred, through the agency of the plaintiff's attorney. His authority to enter into these arrangements is not questioned, and if it were, there is abundant proof the plaintiffs recognised and ratified his acts. These matters of fact were fairly referred by the court to the jury as proper for their decision. The instructions which accompanied this reference are acknowledged to be correct, provided Irons can, in legal contemplation, be regarded as the surety of Burlingame in their relations to the creditor. As between themselves, and for the purpose of charging Burlingame, Irons certainly cannot be so esteemed. As the case is disclosed by the evidence, he stood, in respect to the principal debtors, a mere volunteer, who had undertaken to pay the debt of another without his request, and under no circumstances of compulsion, moral or legal. The undertaking was without privity with, and imposed no additional obligation upon Burlingame. Had Irons, therefore, been compelled to pay the debt in discharge of his assumption, he could not have called on the real debtor to reimburse him, except perhaps in equity, through the medium of the original security, for no man is permitted to thrust himself, unbidden, into a relation which may impose a new, or change an existing liability of another, so far, at least, as his rights are involved. But the relative position of Irons and the plaintiffs, creditors of Burlingame, is very different. He became liable to answer to them before his engagement. The absence of a request by the original debtor inducing the

undertaking, does not absolve him from it, for nothing is clearer than that a stranger may, for a consideration, bind himself to pay the debt of another without his privity or knowledge. In the present case, a sufficient consideration is to be found in the assent of the creditors to accept the guarantied note in discharge of Freeman's indebtedness to them. Irons, then, by affixing his signature to the instrument, became a debtor either as principal or surety. One of the positions he must occupy. He could not be a principal debtor, for he never agreed to become so, neither did he ever derive the slightest benefit from the transaction, nor was he in any way bound for the original debts out of which it arose. He must then be a surety, in respect of the creditors. It is clear, under the evidence, they so accepted him, by their agent, Mr. Niles. Why should they now be permitted to repudiate that relation, and insist upon treating him as a principal debtor? No good reason has been suggested, nor can there be. The only fact existing to differ this from the ordinary case, is the non-request of Burlingame. But there is nothing in the contract of suretyship that can ascribe to this omission the effect of turning Irons into a principal debtor, contrary to his intent. That contract has place where one person, to obtain some trust, confidence or credit for another, engages to be answerable for him: Theo. on Prin. and Su. 1. What is there to prevent this undertaking independently of the principal debtor? Certainly nothing in the nature of the engagement itself. The truth is, the contract of the surety is with the creditor and not with the debtor. It is in fact an every-day practice to assume the responsibility of insuring the faithful discharge of the obligations of others whom the surety has never seen. The most familiar instances are furnished by endorsements of negotiable instruments and guaranty of bonds and other *choses in action*, assigned or transferred by the guarantors. No one has ever thought of calling the validity of these contracts into question, nor has it ever been doubted that those entering into them are entitled to the advantage of every equity ordinarily attendant upon suretyship. In one case, the defendant cannot be regarded as a mere intruder, for he assumed the liability at the request of a debtor of the plaintiffs, desirous to extinguish his own debt by a transfer of the note in question. But I do not rest the point upon this, for no doubt can exist that one may become a surety at the request of a creditor, provided a consideration passes. Now a creditor who accepts a surety is bound to notice the nature of his engagement and to care for his protection: Bowmaker *v.* Moore, 7 Price, 223 ; and this duty the plain-

tiffs owed to Irons. Whether it was faithfully discharged, was one of the questions fairly submitted, as already said, to the jury.

This brings us to consider the only remaining points in the cause. Was Burlingame competent, as a witness, to prove the facts he testified to? Generally, a principal debtor is not a good witness for a surety in an action against the latter; not because he is liable to make good the amount that may be recovered against the surety—for in this his interest is *in equilibrio*, since he is equally liable to the creditor—but that he is also answerable in the event of a recovery, for the costs of the action: Bank *v.* Walker, 9 S. & R. 236, 237; Smith *v.* Thorne, 9 W. 144; Davenport *v.* Freeman, 3 W. & S. 557. It is clear, however, he may be examined to anything tending to exonerate a surety, if he be not liable for costs or is released from the payment of them: Miller *v.* Stem, 2 Barr, 286. But the original debtor is not liable for these costs unless he stands in the relation of principal to the person sued as surety. Before, therefore, any objection to his competency can be entertained on this ground, it must be shown that this relation exists. In this, however, the plaintiff's objection fails, for we have seen that, as against Burlingame, Irons cannot claim the vantage-ground of a surety. The exception to him on the score of interest is, therefore, out of the way.

It is further insisted that he is a party to the record, and therefore incompetent as a witness on grounds of public policy. The rule seems to be that a co-defendant cannot testify for his fellow, though not brought in on process, or being so, though his interest in the event has been destroyed pending the action: Parke *v.* Bird, 3 Barr, 360; Wolf *v.* Fink, 1 Barr, 440. In the latter case, the defendant offered as a witness had become a certified bankrupt, after an award against him and a co-defendant, from which he did not appeal. It was admitted his interest was gone, but he still remained a party to the record, notwithstanding the judgment against him on the award, for this was liable to be modified or altogether annulled upon the trial of the appeal entered by the other defendant: Ramsey's Appeal, 4 W. 71. He was thus in the position of one of several defendants sued in an action *ex contractu*, who suffers judgment to go by default. Yet he cannot be examined as a witness for the others, because the efficiency of the judgment against the party defaulting, depends on the event of the verdict to be rendered on the trial of the issue tendered by the others: Mant *v.* Mainwaring, 8 Taunt. 139; Brown *v.* Brown, 4 Taunt. 752; Schermerhorn *v.* Schermerhorn, 1 Wend. 119; and he, therefore, is still a party

interested in the event of the action. But the general doctrine unquestionably is, that when the suit is ended as to one of several defendants, by verdict or otherwise, and he has no direct interest in its event as to the others, he is a competent witness for them, his own fate being, at all events, certain : 1 Greenl. Ev. § 355. This is of constant practice in action *tort*, where judgment has passed for or against one of several joint trespassers, among whom there is no contribution, for torts being in their nature and legal consequences several as well as joint, distinct judgments may be rendered, and thus one or more of the defendants be disengaged from the record. In actions upon contracts, it is said the rule is generally excluded, for the contract being laid jointly, there must be a joint recovery or none ; and though one suffer judgment by default, yet, as I have said, this waits on and abides the final determination of the issue joined. But when the defence pleaded in such an action goes merely to the personal discharge of the party pleading it, as bankruptcy, infancy, coverture and the like, and the plaintiff enters a *nolle prosequi* as to such party, or a verdict passes for him or her, they are disengaged from the record, and may be called as a witness by the defendants against whom the action proceeds : 1 Greenl. Ev. § 356, and the cases there cited. It has, to be sure, been held the party is not entitled to a previous verdict under such a plea, for the purpose of qualifying him to testify for the others : Raven *v.* Dunning, 3 Esp. 25 ; Emmet *v.* Butler, 7 Taunt. 599 ; though in a more recent case this was permitted : Bate *v.* Russell, 1 Mood & M. 332. Indeed, it has been said it is not easy to perceive why this should not be allowed in actions upon contracts as well as in torts, where the defendant pleads matter in personal discharge, sustained by proof not gainsayed by the plaintiff. Another case may arise under our compulsory arbitration system, where a defendant would be disengaged from the record, and thus become competent to testify for the other in a subsequent stage of the cause. It occurred in Wolf *v.* Fink, where arbitrators, in an action against a principal and two sureties, found an award against the principal and one of the sureties, and in favour of the other, from which the principal debtor appealed. It was said the award and judgment in favour of the surety was good, and from the peculiarity of our system the case might properly proceed on the appeal against the appellant. In that case, I take it, the successful surety was no longer a party to the record, and might have been examined as a witness on the trial of the cause.

If we apply these principles to the question in hand, I think

it will be apparent that Burlingame was rightly admitted to testify. Against him judgment had passed, which could in no wise be affected by this proceeding to try the sufficiency of a defence peculiar to Irons. His fate was decided beyond disturbance. He was, therefore, so far as Irons' defence was concerned, disengaged from the record, or rather he never was a party to it, for, I take it, that under our peculiar system of enforcing judgments entered upon warrant of attorney as to one of several defendants, let in to a defence personal to him, the proceeding is to be regarded as a new action, with which the other defendants have nothing to do. They are not liable for the costs attending it, nor can they be affected by its results. In England, the practice in such cases is to award a collateral issue, and though with us the issue is said to be directed in the cause, it is in the nature of a feigned issue, which embraces only the parties to it. If the verdict be in favour of the defendant on whose application the judgment is opened, it is gone as to him, but remains in fact as to the others. The fact that the names of all the defendants are associated in the original judgment makes no difference, for the legal effect of the proceeding is to sever them for the purposes of the inquiry. To the record made up in the case, but one of the defendants was a party; the other, Burlingame, was an entire stranger. As to him the suit was at an end by the entry of the judgment against him unimpeached. He is, therefore, not within the rule that excludes a party from testifying; and, having no possible interest in the event, we think he was rightly admitted as a witness.

The first bill of exceptions was abandoned.

Judgment affirmed.