# Campbell, Bredin & Co.'s Appeal.

A levy on personal property, under a *fieri facias,* if the goods are left in the debtor's hands, does not postpone the lien of the judgment upon his lands to that of a junior judgment-creditor.

An attachment execution prosecuted to judgment against the garnishee, is not satisfaction of the debt, either in favour of the debtor or of a junior encumbrancer.

*It seems,* that a sale of goods under a *fieri facias,* which are bought in by an agent of the debtor, and the price of which is afterwards paid by the debtor to the execution-creditor, will not have the effect of postponing the lien of the judgment in favour of a younger judgment-creditor.

[Campbell, Bredin & Co.'s Appeal.]

APPEAL from the Common Pleas of *Lawrence county*.

This was an appeal by Campbell, Bredin & Co., from the decree of the court below, distributing the proceeds of a sheriff's sale of the real estate of Thomas M. Wolf.

On the 1st February 1855, two judgments were entered in favour of Thomas McCoy, against Thomas M. Wolf, to December Term 1854, Nos. 172 and 173; the former for $2023.33, with interest and costs; and the latter for $2046.66, with interest and costs.

On the 17th February 1855, Campbell, Bredin & Co., the appellants, obtained a judgment against Wolf for $1005.66, with interest and costs.

On judgment No. 172, McCoy issued an attachment-execution, which was served on Henry Reis as garnishee. Reis was, at this time, indebted to Wolf, in the sum of $3000, with interest, secured by a mortgage on the Lawrence Hotel property. This attachment was prosecuted to judgment against the garnishee.

On the judgment No. 173, McCoy, on the 1st February 1855, issued a *fieri facias*, which was levied on Wolf's personal property, and, at the sheriff's sale, was purchased by Michael Wenrich, the agent of Wolf, for $692.43. The money was not paid to the sheriff, but the writ was stayed, by the plaintiff directing the proceeds of sale to rest in the hands of T. M. Wolf.

On the 10th of April 1856, McCoy, believing that he had subjected himself to be postponed as against the other lien-creditors of Wolf, to the amount of the proceeds of the sale of the personal property, $692.43, obtained from Wolf an assignment of Reis's mortgage, under an agreement that it should pay one-half of each of his judgments against Wolf, without any abatement or credit on account of the sale on the *fi. fa.*, and that the balance should be applied to other dealings between them.

The fund in court for distribution was raised by the sale of the real estate of Thomas M. Wolf; and the auditor appointed to report distribution, awarded the fund, first, to the payment in full of both of McCoy's judgments, after crediting upon them one-half of the amount of principal and interest due at the date of the assignment of the mortgage; and the balance, $592.39, to the appellants' judgment.

This report was confirmed by the court below, notwithstanding exceptions by Campbell, Bredin & Co.; and the following opinion was delivered :—

" Campbell, Bredin & Co., junior creditors, complain that McCoy, by taking an absolute assignment of the mortgage debt, withdrew the same from his attachment under one of his judgments, and thus in effect discharged the attached debt. But of this they cannot complain with any cause, for, though he withdrew the one-half of it from one judgment, he applied it to the other,

[Campbell, Bredin & Co.'s Appeal.]

which was also older than their claim. They lost nothing by taking the mortgage-debt in payment of one-half of each judgment, instead of applying it to payment of the whole of the attaching judgment, for the whole fund was applied to liens prior to theirs.

"But it is said that, in applying one-half of it to the other judgment, they chose to make it pay $692.43, which should be treated as satisfied as to other lien-creditors, because there had been a levy on personal estate to this amount, which had been left in the hands of Wolf by McCoy. It is true that, as between McCoy and the other lien-creditors, they had a right to say his lien was postponed as to this sum, because his levy on personal estate was satisfaction *pro tanto* as to them. But as between McCoy and Wolf, it was not satisfaction. Wolf, in fact, never paid this amount, for he retained the property, or its proceeds, and he had a right to pay the $692.43 to McCoy, if he chose. What was then to hinder him from coming to McCoy, and paying him the $692.43 in cash, and why not in the proceeds of the mortgage? The evidence shows that was the understanding, because the half of the mortgage was applied to this debt, as if there was no credit, and there was not as to him, on the judgment for the amount of this levy. Campbell, Bredin & Co. have the advantage of the credit on the judgment as regards the lien, for not only is the $692.43 paid, but more, to wit, one-half of the judgment by the application of the mortgage to it."

From this decree, the present appeal was taken.

*Dana*, for the appellants, cited *Brightly's Eq.* § 183; Hunt *v.* Breading, 12 *S. & R.* 37; Dean *v.* Patton, 13 *Id.* 344; Cummin's Appeal, 9 *W. & S.* 73; Taylor's Appeal, 1 *Barr* 392; Morrison & Steele's Appeal, 1 *Barr* 23; Cathcart's Appeal, 1 *Harris* 416.

*Taylor*, for the appellees.

The opinion of the court was delivered by

STRONG, J.—The auditor's report establishes that McCoy held two judgments against Wolf, Nos. 172 and 173, December Term 1854, for a little more than two thousand dollars each; both of which were liens upon the lands of Wolf, the proceeds of sale of which are now for distribution, and both prior liens to the judgment of the appellants. Upon the first of his judgments, McCoy had issued an attachment-execution, and levied it upon a debt secured by mortgage, due from Henry Reis to Wolf, amounting to more than $3000, and had obtained judgment thereon. Upon his second judgment, McCoy had issued a *fi. fa.*, had levied upon personal property, and sold it to the agent of Wolf, the debtor, for $692.43, but had received none of the proceeds of sale; the

[Campbell, Bredin & Co.'s Appeal.]

whole having been left in the debtor's hands. These proceedings took place in February Term 1855. Subsequently, in April 1856, McCoy having proceeded no further than to judgment upon his attachment-execution, purchased the mortgage-debt due from Henry Reis to Wolf, and took an assignment of it. The consideration of the assignment was, that he should give a credit upon each of his judgments of one-half of the amount, without any credit or abatement on account of the sale on the *fi. fa.*, and that the remainder of the mortgage-debt assigned, should be applied to the payment of other claims which McCoy held against Wolf. Accordingly, the auditor reported, that there should be paid to McCoy out of the proceeds of sale of Wolf's land, in court, the remainder of his judgments, and the court below confirmed the report, and decreed such a distribution. The appellants complain of this decree, because, as they say, as between McCoy and them, $692.43 were paid upon his second judgment by the *fi. fa.*, and proceedings thereon, and that for that sum, McCoy is not charged in the distribution. It is obvious that it is immaterial whether he be charged in direct terms or not, if he be in effect, and if the appellants, who are the next junior judgment-creditors, have the benefit of such a deduction from McCoy's judgments.

Before, however, proceeding to inquire how this is, we may make our view of the case more clear, by adverting to some of the principles upon which distribution of the proceeds of a sheriff's sale of lands is made. It must be admitted, that as between distributees, that which does not amount to a satisfaction of the debt, as between a prior judgment-creditor and the debtor, may still postpone such prior creditor to a junior lien-holder. But notwithstanding the doubts formerly entertained, it is now settled, that if an older judgment-creditor sues out a *fi. fa.* and levies it upon personal property, those acts alone neither pay his debt, nor postpone his lien upon the debtor's land to that of a junior judgment. He may leave the goods levied upon in the debtor's hands; he may release his levy and abandon his *fi. fa.* without affecting his right as an older lien-holder, to claim the proceeds of sale of the debtor's land. A seizure of goods in execution to the value of the debt, whether they have been sold or not, satisfies the judgment, indeed, if they have, by the seizure, been lost to the debtor; but this rule is inapplicable when they have been left in the continued possession of the debtor, and he has been permitted to use them as his own. This is held in Cummin's Appeal, 9 *W. & S.* 73; in Davids v. Harris, 9 *Barr* 501; and is recognised in Cathcart's Appeal, 1 *Harris* 416; see also Taylor's Appeal, 1 *Barr* 390. Yet more was ruled in Morrison & Steele's Appeal, 1 *Barr* 13. It was there held, that a stay of execution of a *fi. fa.* levied upon personal property, will not, of itself, give preference to the lien of a younger judgment upon the debtor's lands. Yet, if the creditor

[Campbell, Bredin & Co.'s Appeal.]

sell the goods levied upon, under his *fi. fa.*, he is satisfied to the amount of the sale, unless the proceeds be swept away by a prior lien, even though he may not actually have received them. Why is this? It is not because he has been actually paid, for in the case supposed, he has received nothing; but because by his act he has withdrawn the property levied upon from the debtor, and from the reach of the junior judgment-creditor. It was for this reason, that the prior lien-creditor was held to be satisfied, as between him and a younger judgment-creditor, in Hunt *v.* Breading, 12 *S. & R.* 37, though, in that case, there had been no sheriff's sale of the debtor's goods. That was an exceptional case. It does not go the length which seems to be supposed. Chief Justice GIBSON, in speaking of it in Taylor's Appeal, 1 *Barr* 390, said, "No more was determined in Hunt *v.* Breading than that an execution-creditor, whose levy has kept others at bay, shall not abandon it and assign his judgment for the consideration of payment, as an existing lien on the debtor's land." It might have been said, in that case, that the first judgment had been actually paid. Mr. Justice BELL remarks of it, in Cathcart's Appeal, 1 *Harris* 416, that the prior judgment had been held satisfied, because the levy upon its execution had "been diverted to the payment of a posterior judgment, to the detriment of an intermediate lien."

As already said, however, a simple *fi. fa.* and levy upon goods leaves the lien of the judgment upon land undisturbed. So, upon the same principle, an execution-attachment which seizes a debt due to the debtor, even though it be prosecuted to judgment against the garnishee, is no satisfaction of the debt, either in favour of the debtor, or any subsequent judgment-creditor of the debtor. It is not, so far as regards the debtor, for if it were, it could be pleaded in bar of the original claim, and the effect of such an attachment would be simply to substitute one debtor for another. And there is even less reason for its being considered satisfaction in favour of a junior judgment-creditor, than exists in the case of a levy upon goods under a *fi. fa.*, because such a levy vests property in the sheriff, sufficient at least, to enable him to maintain trover. This is not so, in case of an attachment-execution: nothing is withdrawn from the debtor, even when judgment has been obtained against the garnishee, nothing until the attached debt has been paid. It was therefore competent for McCoy to abandon his proceeding under his attachment-execution, without impairing the lien of his judgment upon Wolf's land. Nor did he through his attachment withdraw anything from the reach of the appellants. He attached only a part of the debt due from Reis, the remainder was left open to an attachment at the suit of Campbell, Bredin & Co., and indeed the whole might have been attached subject to McCoy's prior attachment. It is to be observed also, that the part of the mortgage-debt not covered by McCoy's attach-

ment was greater in amount than the entire amount of sales under the *fi. fa.* I cannot, therefore, perceive that the attachment-execution and the proceedings thereon have anything to do with this case.

Were it necessary, it might perhaps be questioned with some plausibility, whether the proceedings under the *fi. fa.* upon McCoy's judgment No. 173, amounted to satisfaction, to the extent for which the goods levied upon were sold. They resulted in no actual payment of any part of the judgment, and they did not withdraw the goods from the reach of a subsequent execution, at the suit of Campbell, Bredin & Co. The sheep were bought by a person employed by Wolf, were left in his possession, and were paid for by him in the assignment of the mortgage. They were therefore open to seizure at the suit of any creditor, notwithstanding the sale under McCoy's execution. Now, if the reason for postponement of a prior judgment-creditor, not actually paid, be (as has been said, and as some of the cases assert) that he has by his execution withdrawn the property levied upon from the reach of the junior creditor, the reason for postponement would seem not to exist in this case. In regard to this, however, we express no opinion. Admitting, that though McCoy got nothing out of the sale, and Wolf lost nothing by it, the amount of it must be credited upon the judgment in the distribution; how, then, stands the case? Has it, or has it not, been credited in the distribution, so far as the appellants are concerned?

McCoy and Wolf supposed that the $692.43 were liable to be postponed in consequence of the *fi. fa.* and sale. The auditor's report shows that the purchase of the mortgage was intended to protect McCoy against probable loss on account of such postponement. The mortgage still belonged to Wolf, notwithstanding the attachment. He could dispose of it as he pleased, and none of his creditors, junior to McCoy, had any power to control his disposition of it. He could legally apply a part or all to the payment of a simple contract-debt, unless McCoy objected. He did assign the whole mortgage to McCoy. The consideration of the purchase was, as stated in the report of the auditor, "that it should pay one-half of each judgment of McCoy v. Wolf, without any abatement or credit on account of the sale on the *fi. fa.*, and the balance was to apply on some other dealings between them." This was the agreement of the parties. It is to be construed so as to carry out their intentions, unless some rule of law intervene. Now, as has been said, there was nothing to hinder Wolf from applying the mortgage-debt to the payment of any debt due from him to McCoy, whether secured by judgment or not; at least no other than McCoy could object to such an appropriation. He owed to McCoy a simple contract-debt of $692.43, for it must be considered only as a simple contract-debt, as between McCoy and the

appellants.   He owed also to McCoy, debts not included in his judgments.   With McCoy's consent, he could apply just as much or as little of the mortgage-debt, due to him from Reis, to the payment of the judgments, as he pleased.   How, then, did he apply it?   We think, not *first* to the payment of one-half of the two judgments, as if the whole of each remained unpaid, and the remainder to other claims of McCoy; thus reducing the judgments by one-half of their original amount, and in addition to the reduction known to be caused by the sale on the *fi. fa.*   This was the very thing which the arrangement was intended to prevent.   The purpose seems rather to have been, to make the entire credit upon the judgments, including the sum of $692.43, equal to one-half of what would have been the amount of the judgments, if no sale had ever been made under the *fi. fa.*   Accordingly, the judgments were to be reduced, first, by the sum of $692.43, and next, by such an additional sum as, added to the proceeds of sale under the *fi. fa.*, would make up an amount equal to one-half of both judgments, as they stood on the record, without crediting the avails of the sheriff's sale.   This appears to us to be a fair construction of the arrangement between Wolf and McCoy.   It is the only possible one which gives effect to the intention of the parties, as reported by the auditor.   The consideration of the assignment of the mortgage, then, was not that there should be no abatement, or partial satisfaction of the second judgment in consequence of the *fi. fa.*, for that was known to be inevitable in favour of the next lien-creditor, but that the sum paid on the judgments should not be abated or reduced on account of the *fi. fa.*

Nor does this construction work injury to the appellants, for they have the advantage of a credit of the $692.43 upon the judgments of McCoy, and an additional credit which, with the first, makes an aggregate of one-half of what the whole debt would be, if the first sum were not credited.   The additional credit is one to which they would not have been entitled, except for the purchase of the mortgage.

It is to be observed, that no credits appear to have been actually entered upon the record.   They are, therefore, to be allowed as the law makes them, and as the parties agreed to make them. We think the court below has done so in confirming the auditor's report, for though in words the avails of the *fi. fa.* are not credited, they are in practical effect.

The appeal is dismissed at cost of appellants.