# Griesmere, Appellant, *v.* Thorn.

*Principal and surety—Release of surety—Execution—Lien—Fieri facias—Levy.*

The mere failure to follow up the general lien of a fieri facias by a levy upon and sale of the property of a principal, even where the principal has, at the time the writ was in the sheriff's hands, sufficient personal property to pay the judgment, will not release the surety, who has not required the creditor to proceed on his execution.

Where a creditor has the means of satisfaction in his hands, and does not choose to retain it, but suffers it to pass into the hands of the principal debtor, the surety is discharged.

*Judgment—Revival of judgment—Defenses.*

If the consideration of a judgment has failed, or there is a defense growing out of the original equity to a part or all of the sum for which the judgment was entered, it is the privilege of the defendant to make application to the court to open the original judgment and permit him to defend; but so long as that judgment remains unassailed, no inquiry can be made into the consideration upon a trial of a scire facias to revive.

*Execution—Bill of sale—Sheriff's sale—Judgment.*

Where all the goods covered by a bill of sale have been sold at a sheriff's sale upon an execution issued on a judgment upon one of the notes for which the bill of sale was given as collateral, the amount realized by the sheriff's sale is conclusive as to the value of the property.

Argued Jan. 10, 1906. Appeal, No. 52, Jan. T., 1906, by plaintiff, from judgment of C. P. Luzerne Co., Oct, T., 1902,

14        GRIESMERE, Appellant, v. THORN.

No. 474, on verdict for defendant in case of Jacob Griesmere
v. Frederique Thorn and Maggie O'Boyle, Executrix of the
Estate of Hugh O'Boyle, deceased. Before RICE, P. J., POR-
TER, HENDERSON, MORRISON, ORLADY, HEAD and BEA-
VER, JJ. Reversed.

Scire facias to revive a judgment. Before LYNCH, P. J.
The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:
According to the testimony of Miss Cannon, called by the
defendant, she caused the execution to be issued on this judg-
ment. She testified, in substance, she said to the sheriff " levy
upon the property of O'Boyle, but do not now, or at present,
levy upon the property of Thorn." Deputy sheriff Seiple testi-
fied she said, " levy upon the property of O'Boyle and do not
levy upon the property of Thorn." But on cross-examination
said he would not swear Miss Cannon did not say to him " not
at present " or " not now."
It is the duty of the surety to give notice to the creditor to
proceed against the principal, but if the creditor does proceed
upon his judgment, issues execution and places it in the hands of
the sheriff, it is the duty of the sheriff to levy first upon the
personal property of the defendant named in the writ; he is
presumed to know nothing except to obey the order of the writ,
make demand first, then levy if the money is not paid, adver-
tise and sell, realize the money and pay it to the creditor.
Whether the law be or not as argued, it appears to the court
this must be the law :—[If the creditor, when a writ is placed
in the sheriff's hands, before he does anything upon the writ
orders him not to levy upon the principal's property and to
levy upon the surety, that certainly is equivalent to withdraw-
ing it from levy if already made.] [1] Because it would be
the sheriff's duty to levy, and if prevented from exercising
such duty, by order of the plaintiff in the writ, the latter
could not afterwards say the creditor is exempt because the
sheriff had not actually levied. [If the order not to levy
upon Thorn was explicit and unqualified by Miss Cannon,
but to levy upon O'Boyle, it would exempt O'Boyle.] [2]
If simply not to levy now, with the qualification he could

levy after, it would not.  Because, as well argued by Miss Cannon, the sheriff had a certain time within which to levy on both.

You must consider, too, the fact that a few days after this writ was placed in the sheriff's hands, it was stayed upon the affidavit of the defendant.  The crucial test and the sense of the thing is, was it plaintiff's fault that Thorn's property was not held by the execution?  If it was by his order, he should not get the advantage of it now.  If not done by his command, through his counsel, he should not be held responsible and it should not be charged against him.

On the same but later in the day, the note was signed by Thorn and O'Boyle.  Mrs. Thorn made a bill of sale of what might be called the bottling establishment, which has been read in your hearing, to Mr. Griesmere.  [If Griesmere without the surety's knowledge, without O'Boyle's knowledge, knowing that O'Boyle was surety for the payment of this money, deliberately and intentionally by a scheme with Thorn withdrew the property of Thorn, so that it could not be reached by execution, and therefore execution would be thrown over on O'Boyle, it would be unfair dealing.] [3] It is claimed O'Boyle knew it—part of the testimony is O'Boyle knew this transaction had taken place, and the other, that he did not know.  If it was done by Griesmere for the purpose of withdrawing the property of Thorn from the reach of the execution and thereby throwing the weight of debt upon O'Boyle, it would be illegal.

Plaintiff presented these points:

2. Jacob Griesmere was under no obligation to proceed to collect this judgment out of the property of Fred. Thorn in the absence of notice from Hugh O'Boyle or his representatives. *Answer:* This is true as a general proposition, but it is not true in this case and is therefore denied. [4]

3. Execution having been issued against Thorn and O'Boyle which was stayed on application of the surety four days later, and no levy having been made on Thorn's property, the plaintiff never had such possession or control of defendant's (Thorn's) property as would discharge the other defendant, Hugh O'Boyle, or his estate.  *Answer:* No. 3 is denied. [5]

4. Neglect or refusal to levy in the absence of notice from

the surety will not discharge the surety. *Answer :* No. 4 is denied. [6]

6. The jury should disregard all evidence as to the alleged bonus of $200. *Answer :* No. 6 is denied. [7]

7. In the absence of notice from the surety to proceed to collect from defendant's goods the plaintiff is not chargeable with the value of the goods at the time the note fell due, or until the same were actually sold, and the only evidence of their value at that time is the sheriff's return to the writ. *Answer :* No. 7 is denied. [8]

8. The testimony showing that the alleged promise to postpone the payment of the old indebtedness until after the O'Boyle note was paid, was made after the execution of the O'Boyle note, was without consideration and therefore not binding. *Answer :* No. 8 is denied. [9]

Defendant presented these points :

1. If the jury believe that before the note in suit was executed by the defendant, O'Boyle, Griesmere agreed that all moneys paid by Thorn to him, Griesmere, on the indebtedness subsequently thereto, should be applied on the said note, then they may allow the defendant credit for said sum so paid. *Answer :* Affirmed. [10]

2. If the jury believe that Thorn paid to Griesmere $200 out of the $1,200, as a bonus for the loan, the defendant will be entitled to a credit for the same. *Answer :* Affirmed. [11]

3. If the jury believe that the attorney for plaintiff after she had placed the execution in the hands of the sheriff instructed him not to levy on Thorn, and by reason thereof his personal property was released from the lien of said execution, they may allow the defendant credit for the amount that the personal property of the defendant, Thorn, so released would have realized at sheriff's sale at that time, less the costs of sale. *Answer :* That is affirmed with this addition : " by reason thereof alone and only." [12]

4. If the jury believe that the bill of sale was made and delivered to Griesmere with the express condition and agreement, as testified to by Thorn, that the O'Boyle note should first be paid thereout and therefrom, and Griesmere took possession of said goods or of the greater part of the same, then they may allow the defendant credit for the value of the goods so taken

as represented by their fair market value at the time he took possession of the same.   *Answer :* That is affirmed, but it will be necessary for you to ascertain from the evidence what the fair market value at that time was. [13]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (1–13) above instructions, quoting them.

*R. Laura Cannon,* for appellant.—A surety is primarily liable, and may be proceeded against without recourse to him for whom he is engaged to answer : Supplee v. Herrman, 16 Pa. Superior Ct. 45 ; Baker v. Small, 17 Pa. Superior Ct. 423.

And that in the absence of express notice from the surety to the plaintiff to proceed, the plaintiff is under no obligation to pursue the principal, and the surety is not discharged because of failure to so proceed : Conrad v. Foy, 68 Pa. 381 ; Fidler v. Hershey, 90 Pa. 363.

Mere indulgence to the principal until he becomes insolvent and unable to pay a debt, will not release the surety on a note which was the evidence of the debt, without omission by the plaintiff to proceed after notice : Johnston v. Thompson, 4 Watts, 446 ; Baker v. Small, 17 Pa. Superior Ct. 423 ; Morrison v. Hartman, 14 Pa. 55 ; Cathcart's App., 13 Pa. 416 ; Stephens v. Monongahela Nat. Bank, 88 Pa. 157 ; United States v. Simpson, 3 P. & W. 437 ; Rhoads v. Frederick, 8 Watts, 448 ; Erie Bank v. Gibson, 1 Watts, 143.

When an execution is placed in the sheriff's hands the plaintiff by reason thereof has no more control of the debtor's goods than would a judgment creditor with a lien on lands have control of the lands.   The execution delivered to the sheriff binds the personalty somewhat as a judgment duly entered binds the land, and it has been repeatedly held that suffering the lien on lands to expire does not discharge the surety : Mundorff v. Singer, 5 Watts, 172 ; U. S. v. Simpson, 3 P. & W. 437 ; Campbell v. Sherman, 151 Pa. 70 ; Winton v. Little, 94 Pa. 64.

Where there has been no levy made upon the property of the principal and no notice given by the surety to proceed against the property, the rules of law governing forbearance are the same before as after judgment : Crawford v. Gaulden,

33 Georgia, 173 ; Miller v. Porter, 24 Tenn. 294 ; Wade v. Green, 22 Tenn. 546 ; Humphrey v. Hitt, 6 Gratt. (Va) 509 ; Alcock v. Hill, 4 Leigh, 622 ; Fulton v. Wedge, 15 Johnson, 433.

*James L. Lenahan,* for appellee, cited : Cathcart's App., 13 Pa. 416 ; Holt v. Bodey, 18 Pa. 207 ; Templeton v. Shakley, 107 Pa. 370 ; Com. v. Miller, 8 S. & R. 452 ; Com. v. Haas, 16 S. & R. 252 ; Richards v. Com., 40 Pa. 147 ; Talmage v. Burlingame, 9 Pa. 21 ; Fegley v. McDonald, 89 Pa. 128 ; Commercial Nat. Bank v. Henniger, 105 Pa. 496.

OPINION BY PORTER, J., October 5, 1906 :

The questions presented by this record arise upon a scire facias to revive and continue the lien of a judgment. The original judgment was entered on August 17, 1897, upon a note with warrant of attorney to confess judgment, in favor of the plaintiff and against Frederick Thorn and Hugh O'Boyle ; the scire facias was issued on July 19, 1902, and judgment was entered for default on September 11, 1902. A write of fi. fa. was, on September 20, 1904, issued upon the last judgment. The defendants, on September 24, 1904, acting jointly, presented petitions praying that the judgment on the scire facias be stricken off, that the service of the writ be set aside, and that all proceedings be stayed. The court, upon the presentation of these petitions, granted a rule to show cause why the judgment should not be stricken off and the service of the scire facias set aside, and ordered that all proceedings be stayed meanwhile, as prayed for by the defendants, " sheriff to be secure in his levy." No levy had been made upon the personal property of Thorn at the time the order staying the proceedings was made, and the return day of the writ had passed before the rule was disposed of, so that it was impossible to make a levy, after the order staying the proceedings. The sheriff was subsequently permitted to amend his return of service of the scire facias, and the court, on January 4, 1905, discharged the rule to set aside the service of the scire facias, and made absolute the rule to " set aside the judgment." This order was amended on January 7, 1905, and the rule to strike off the judgment was discharged as to Frederick Thorn, and made

absolute as to Maggie O'Boyle, executrix, " she to appear and plead within ten days." Margaret O'Boyle, executrix, having entered a plea, the trial of the issue resulted in a verdict in her favor, and the plaintiff appeals.

Several of the specifications of error refer to rulings of the court below as to the effect, upon the rights of the parties, of certain instructions given by the attorney for plaintiff to the sheriff with regard to the manner in which he should proceed upon the execution. The defendant called as a witness the attorney of the plaintiff, who had issued the execution, who testified that on the day the execution issued she directed the sheriff to levy on the property of the O'Boyle estate, " and not to levy upon Thorn now." The deputy sheriff who received the instructions was also called as a witness by the defendant, and he testified that the instructions were " to levy on Mrs. O'Boyle and not on Thorn." The difference in the testimony of these witnesses does not appear to be material, for there was nothing in the testimony of either of them which would have warranted a finding that the writ had been stayed as to Thorn, nor that the plaintiff had released the property of Thorn from the general lien of the writ, nor that he had put himself in a position where he could not order a levy upon the property of Thorn at any time. The fi. fa. was not returnable until the second Monday of October; had it not been for the action of the defendants the plaintiff could have ordered a levy upon the property of Thorn at any time prior to the return day. Maggie O'Boyle, executrix, who represented an estate which was surety for Thorn, for the debt involved in this controversy, might have required the plaintiff to cause the goods of Thorn, the principal, to be levied upon under the writ, and she would then have been in a position to take advantage of the principle which she now seeks to invoke : Cope v. Smith, 8 S. & R. 110 ; Baker v. Small, 17 Pa. Superior Ct. 423. Instead of doing this she joined Thorn in procuring a stay of the proceedings, and thus put it out of the power of the plaintiff to levy upon the personal property of Thorn under that writ. Where the creditor has the means of satisfaction in his hands, and does not choose to retain it, but suffers it to pass into the hands of the principal debtor, the surety is discharged. " Where there is a levy on personal property belonging to the principal, it is

satisfaction pro tanto, as regards the sureties; of the benefits of which nothing could deprive them except an assent, on their part, to the arrangement by which the property was released: " Commonwealth v. Vanderslice, 8 S. & R. 452; Commonwealth for use of Bellas v. Haas, 16 S. & R. 252; Talmage v. Burlingame, 9 Pa. 21; Cathcart's Appeal, 13 Pa. 416. Mere supineness and delay in pursuing the principal, unless the inaction be in disregard of an express request of the surety, or there be some circumstance which makes it the imperative duty of the creditor diligently to seek payment from the principal, will not release the surety: Cathcart's Appeal, 13 Pa. 416; Richards v. Commonwealth, 40 Pa. 147. The execution was a lien upon the personal property of Thorn the moment it reached the sheriff's hands, but that lien was an inchoate one, without possession or right of possession of the debtor's goods by reason thereof, whereas a levy is the actual possession of the debtor's goods. An actual levy, is a seizure, by authority of law, of specific property for the payment of a debt. The release of the goods, by the creditor, after a levy, operates pro tanto as a release of the surety, and, at common law, if the goods were, by the seizure, lost to the debtor, that might also operate as a satisfaction of the judgment as to him: Campbell, Bredin & Co.'s Appeal, 32 Pa. 88. "The distinction between the lien of the writ and the lien of the levy seems to be that the latter is a technical satisfaction of the judgment:" Stephens v. Monongahela National Bank, 88 Pa. 157. That the mere failure to follow up the general lien of a fi. fa., by a levy upon and sale of the property of a principal, even where the principal had, at the time the writ was in the sheriff's hands, sufficient personal property to pay the judgment, will not release a surety who has not required the creditor to proceed on his execution, has been definitely decided: Morrison v. Hartman, 14 Pa. 55. The first, second, fourth, fifth, sixth, eighth, twelfth, fourteenth and sixteenth specifications of error are sustained. The court below permitted Thorn, the principal debtor, to testify that at the time of the original transaction, when the loan was made by the plaintiff and the note upon which this proceeding is founded was executed and delivered by the defendants, he paid the plaintiff $200 as a bonus, so that he only received $1,000 as the net proceeds of the loan. The original judgment was

entered in 1897, this scire facias to revive and continue the lien was issued in 1902, and the original judgment still stands in full force upon the records of the court of common pleas. " If the consideration of the judgment had failed, or there was a defense growing out of the original equity to a part or all of the sum for which the judgment was entered, it was the privilege of the defendants to make application to the court to open the original judgment and permit them to defend ; but so long as that judgment remained unassailed, no inquiry could be made into the consideration upon a trial of the scire facias : " Kincade v. Cunningham, 118 Pa. 501. The seventh and eleventh specifications of error are sustained. There was no evidence of a scheme between Griesmere and Thorn to defraud O'Boyle, and a fact of which there is no evidence ought not to be submitted to the determination of the jury. The third specification of error is sustained.

Thorn testified that at the time O'Boyle became surety upon the note in question, there was an agreement between the plaintiff, O'Boyle, and Thorn, that the plaintiff, who held another claim against Thorn, should credit the payments made by Thorn, first upon the $1,200 note upon which O'Boyle became surety, and after that was paid, upon the other note ; and that in pursuance of this arrangement he, Thorn, made an arrangement with the plaintiff that the brothers of the latter should pay to the plaintiff, upon account of the O'Boyle note, the amount of any purchases of goods which they might make of Thorn. The amount of goods so sold by Thorn to the brothers of the plaintiff was $288, which amount was paid to the plaintiff by his brothers. The plaintiff denied this arrangement, but the question was for the jury.

When the defendants executed and delivered the note in question, and as a part of the same transaction, Thorn and his wife executed a bill of sale to Griesmere for certain specific personal property, the consideration mentioned being $2,344 ; this was given as a collateral security for the debt in question as well as for an older note, amounting to $1,144, which the plaintiff held against Thorn. There was not, nor was it intended that there should be, any delivery of the goods to Griesmere. Thorn testified that it was agreed between the plaintiff, O'Boyle, and himself that any money realized out of

this property should first be credited on the $1,200 note upon which O'Boyle was surety, and that any surplus should go to the older note. This testimony was flatly contradicted, but the facts were for the jury. It is an undisputed fact that this property was sold at sheriff's sale, upon an execution issued by Griesmere on a judgment entered on his other note, in November, 1904, after the execution which had been issued on the judgment from which we have this appeal had been stayed by the court and after its return day had passed. All the goods covered by the bill of sale having been sold at sheriff's sale upon an execution issued on a judgment upon one of the notes for which the bill of sale was given as collateral, the amount realized by the sheriff's sale is conclusive as to the value of the property: Com. v. Haas, 16 S. & R. 252. The eighth and thirteenth specifications of error are sustained. The fifteenth specification of error does not seem to have been founded on any exception allowed by the court below and cannot be considered.

The judgment is reversed and a venire facias de novo awarded.