## Sophia Wilks B. & L. Assn., to use, v. Rudloff

*Frank Fogel* and *George S. Pressman,* for plaintiff.
*Harry J. Gerber,* for defendant.

GORDON, JR., P. J., April 9, 1943.—This is a rule by defendant, Emil E. Rudloff, to mark the judgment recovered in this case satisfied and to dissolve an attachment execution issued thereon. On December 7, 1926, plaintiff entered judgment for $5,150 against defendant on the latter's bond secured by a mortgage, and on the first Monday of May 1928 bought in the mortgaged property for $50 at the sheriff's sale under the judgment. In 1929 the judgment was marked to the use of Ethel Wiche, and on September 17, 1935, an attachment execution was issued, directed to the Kensington Security Bank & Trust Company, substituted trustee

under the will of Elizabeth Sachse, deceased, as garnishee. The garnishee's answers to the interrogatories disclosed that defendant, Rudloff, was the owner of a vested remainder interest in a trust created by the will of Elizabeth Sachse, deceased, subject to a life estate in his father, who was still living. On May 17, 1940, this court, in an opinion filed by Rosen, J., entered judgment on the interrogatories against the garnishee in the sum of $5,100, the balance due under plaintiff's judgment against defendant, "to the extent that the same may become payable after due determination of the orphans' court out of the share or interest of Emil E. Rudloff, defendant, in the estate of Elizabeth Sachse, deceased, subject, however, to the balance of $405 with interest due Harry J. Gerber on the prior assignment by defendant to him." It will be noted that at this point the record discloses a sheriff's sale in 1928 of the mortgaged premises to plaintiff for a nominal consideration followed, in 1940, by a judgment against the garnishee in the attachment execution proceedings to the extent of $3,100, payable out of defendant's remainder interest in the trust estate, when and as it should fall into enjoyment through the death of the life tenant. The record remained in this condition until February 3, 1943, when the present rule was taken to mark the principal judgment against defendant satisfied and to dissolve the attachment. During this interval, however, the two circumstances occurred which give rise to the questions of law raised by the rule: (1) The passage by the legislature of the Deficiency Judgments Act of July 16, 1941, P. L. 400, which was held constitutional by the Supreme Court as to judgments recovered before its passage (The Pennsylvania Co., etc., v. Scott, 346 Pa. 13), and (2) the life tenant died and defendant's interest in the trust fell into enjoyment on January 14, 1943, which was just two days less than six months after the Deficiency Judgments Act went into effect. That act requires plaintiffs in execution, who,

as here, have bought in real estate of their judgment debtors, to give credit on the judgment, determinable in the manner prescribed by the act, to the extent of the fair market value of the property bought in, regardless of what it may have brought at the sale. The act then provides that, upon failure of a plaintiff to give such credit within six months after the sale, or in the case of prior judgments, after the act became effective, defendant and all persons directly or indirectly liable for the judgment debt should be discharged from all further liability therefor. In effect, this latter provision gives rise to a conclusive legal presumption, arising from the failure to give the credit within the prescribed period, that the property sold was worth at least the full amount of the judgment debt, and, by discharging the debtor from liability for it, automatically gives the credit which satisfies the judgment in full.

The foregoing situation raises two questions for our determination: First, whether defendant is entitled to have the judgment against him marked satisfied in view of the outstanding judgment in the attachment execution, and, second, if so, what is the effect of the satisfaction of the principal judgment upon the judgment secured by plaintiff against the garnishee? The fact that the judgment had been marked to the use of a third person does not affect either of these questions, because she is merely the assignee of the judgment and acquired by the assignment no greater rights than those of plaintiff itself: First National Bank of Pittsburgh, for use, v. Bank of Pittsburgh, 99 Pa. Superior Ct. 600; Work v. Prall, 26 Pa. Superior Ct. 104; Marsh, to use, v. Bowen, 335 Pa. 314; and hence, for purposes of clarity, we will eliminate reference to the use-plaintiff from our discussion of the questions before us.

It is clear that defendant is entitled to have the judgment against him satisfied of record. The balance owing by defendant to plaintiff when the attachment

was issued was the difference between the amount of its judgment and the fair market value of the foreclosed property, which the law then regarded as being determined by the price brought by the property at the sheriff's sale. The Deficiency Judgments Act, however, changed the method of computing this deficiency, and since no petition was filed within six months to fix the fair value then the judgment has been repaid in full. In upholding the constitutionality of the Deficiency Judgments Act in the Scott case, supra, Mr. Justice Stern said (p. 17) :

"The right of plaintiff . . . was to receive the payment from Burns of $3000, but . . . if, in execution proceedings, the mortgagee buys the mortgaged premises, he must credit the fair value thereof on the bonded indebtedness, . . . the act, recognizing plaintiff's right to recover the full amount of the judgment, merely provides for an inquiry in regard to a transaction which occurred *subsequent* to the judgment, to wit, the sheriff's sale, in order to ascertain what amount of payment plaintiff has received, such an inquiry being analogous to the trial of an issue of payment raised as a defense . . ."

Without questioning this decision in any way, plaintiff contends that, although the judgment is now fully discharged by operation of law, there is nothing in the Deficiency Judgments Act which expressly gives a defendant the right to have the judgment so repaid marked satisfied, and hence that we are without power to do so, especially if the result would be to deprive plaintiff of the fruits of his judgment against the garnishee. This is a manifest non sequitur, which results from plaintiff's confusing the two separate and successive acts of relief asked for by defendant; namely, the satisfaction of the principal judgment, and then the dissolution of the attachment. The marking of the judgment satisfied would not in itself determine the

rights of plaintiff under the attachment. Whatever rights, if any, it may have in that respect, which will be discussed in our consideration of the rule to dissolve the attachment, arise by operation of the Deficiency Judgments Act which compels crediting the fair market value of the property on the judgment, and the satisfaction of the judgment is merely a judicial recognition of the legal consequences of the provisions of that law. Indeed, plaintiff concedes that, except for its rights under the judgment against the garnishee, its judgment against defendant was discharged in all respects, by its failure to give the required credit within the prescribed time.

This being so, we think it clear that, regardless of the outstanding judgment in attachment, defendant is entitled to have the judgment against him satisfied of record, for it has been discharged as completely and effectually as if it had been actually paid off in cash. Standing unsatisfied, it is in the nature of a cloud on the title of any other real estate that defendant may own subject to its colorable lien, and it was to give relief from this and similar situations that the Act of March 14, 1876, P. L. 7, sec. 1, 12 PS §978, was passed, providing that ". . . in all cases where a judgment has been or may hereafter be entered in any court of record in this commonwealth, . . . the court having jurisdiction shall, upon application by the defendant . . . in the said judgment, . . ." and upon a showing that it has been fully paid "direct the prothonotary to mark such judgment satisfied of record. . . ." This act, giving the courts power generally to mark judgments that have been fully discharged satisfied of record, is ample authority for satisfying the judgment in this case. The rule in this respect is therefore made absolute, and the prothonotary is directed to mark the judgment against the defendant satisfied of record.

The judgment being now discharged and satisfied of record, we come to a consideration of the effect of

that discharge upon the attachment execution and the judgment secured under it against the garnishee. The solution of this question depends upon a recognition of the real nature of an attachment execution. While it is true that an attachment proceeding involves the rendition of a judgment in favor of the plaintiff and against the garnishee, such a judgment is not absolute and unconditional. It is merely a step in the process of an execution by which property of a defendant unreachable by the usual and ordinary execution processes is subjected to a lien in favor of the judgment creditor. It derives its life and validity from the original judgment upon which it is based, and is conditioned upon the continued existence of that judgment. Plaintiff's contention, that to dissolve or set it aside now would constitute a collateral attack upon it and would operate to deprive plaintiff of a vested right in the property attached, is without merit. All outstanding and unrealized executions necessarily fall with the satisfaction of the judgment on which they are issued, and in granting defendant's motion to dissolve the attachment we in no way challenge the validity of, or diminish, plaintiff's rights under the attachment judgment. We merely recognize and give effect to the repayment of the judgment debt which plaintiff has already received through his purchase at the sheriff's sale of a property of defendant which is now presumed in law to have been worth the full amount of the judgment. Certainly the judgment against the garnishee would be unenforcible if defendant had satisfied the principal judgment by a cash payment to plaintiff immediately before the time limitation of the Deficiency Judgments Act operated to discharge the latter. An attachment execution judgment is not a satisfaction of the debt on which it is issued: Campbell, Bredin & Co.'s Appeal, 32 Pa. 88; Glenn v. Davis, 2 Grant's Cases, 153; and the fact that it is outstanding and unsatisfied

would not be a defense to the contemporaneous issuance of any number of executions against other property of defendant upon the theory that the principal judgment had been pro tanto satisfied by the mere rendition of the judgment in the attachment proceedings. That judgment is in this respect merely a step in the execution process. It exists solely to promote a satisfaction of the judgment on which it is issued, and its life and vigor are limited and defined by the latter. When, therefore, the principal judgment received the credit directed by the Act of 1941, it was thereby satisfied and extinguished, and the judgment against the garnishee necessarily died with it.

It does not help plaintiff that defendant's reversion fell into enjoyment before the expiration of the limitation period prescribed by the Act of 1941. Immediately upon the passage of that act, it became the duty of plaintiff to credit on its judgment the fair market value of the property bought by it at the sheriff's sale in 1928, and plaintiff cannot, by delaying the performance of that duty, to the detriment of defendant, reap an advantage for himself which a prompt performance of it would have avoided. It was the receipt of a property worth the amount of the judgment which discharged it. The Deficiency Judgments Act merely compelled effect to be given to that fact. We do not know, nor do we think it important, whether the property was actually worth the full amount of the judgment. It may be assumed that it was, for, if it was not, plaintiff would have moved, before the expiration of the period of limitation prescribed by the act, to have a lesser value fixed for the property. However that may be, the act itself has now created a conclusive presumption that the property was worth at least 100 percent of the judgment.

If plaintiff's contention were to prevail, it might well receive on account of its $3,100 judgment, not

only a property worth $3,100, but also an additional $3,000 represented by the value of the remainder interest reached by the attachment execution. It was to prevent just such an inequitable result that the Deficiency Judgments Act was passed. In conclusion, it should be noted that, since this rule was made absolute by us, the same questions have been considered, and the same conclusions reached, by our brother Kun in an able and comprehensive opinion in the case of Brennan, Trustee, v. Keller, 47 D. & C. 490, to which reference is here made.

It was for the foregoing reasons that we made absolute the rule to mark the judgment against defendant satisfied, and to dissolve the attachment execution.